**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SHAHZAD HASHMI,<br><br>         **Plaintiff,**<br><br>   **v.**<br><br>**CITY OF JERSEY CITY; MIKE KELLY,** *Chief of the Jersey City Police Department*; **and EDGAR MARTINEZ,** *Deputy Chief of the Jersey City Police Department,*<br><br>         **Defendants.** | Civil Action No.: 19-18884 (ES) (MAH)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Officer Shahzad Hashmi sues the City of Jersey City ("Jersey City"), Chief Mike Kelly, and Deputy Chief Edgar Martinez[1] of the Jersey City Police Department (together, "Individual Defendants," and with Jersey City, "Defendants") asserting claims of religious discrimination, failure to accommodate, and retaliation.  (D.E. No. 14, Amended Complaint ("Am. Compl.")).  Presently before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Federal Rule Civil Procedure 12(b)(6).  (D.E. No. 17).  Having considered the parties' submissions, the Court decides this matter without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  As set forth below, the motion is GRANTED in part and DENIED in part.  Officer Hashmi's claim that former-General Order 10-18 is facially discriminatory is dismissed *with prejudice*.  His other dismissed claims are dismissed *without prejudice*.

---

[1]     For purposes of this Opinion, the Court refers to Deputy Chief Martinez as Captain Martinez—his title when all the events alleged in this case took place.

## I.     BACKGROUND

As alleged in the Amended Complaint, Officer Hashmi is a police officer with the Jersey City Police Department ("JCPD") and an observant Sunni Muslim.  (Am. Compl. ¶¶ 14 & 19).  Officer Hashmi must wear a beard pursuant to his sincerely held religious beliefs.  (*Id.* ¶ 22).  While the JCPD generally prohibits officers from wearing beards, there are exemptions—one of which is for religious purposes, a second for medical purposes, and a third for assignment-related purposes.  (*Id.* ¶¶ 23–25, 27–28 & 50).  On July 5, 2017, Officer Hashmi obtained a religious accommodation to wear a beard at a length no longer than one-half inch so long as he kept his beard "neat and clean" and complied with all other requirements of the JCPD's beard policy at that time.  (*Id.* ¶¶ 23–24 & 41).  Officer Hashmi does not object to that accommodation.

On March 23, 2018, however, and at the direction of Chief Kelly, the JCPD changed its beard policy.  (*Id.* ¶ 25).  The new policy was codified in former-General Order 10-18.  Officer Hashmi alleges that former-General Order 10-18 required officers who were wearing beards for religious purposes to maintain a beard length of no greater than "one-half inch, *un-manicured*." (*Id.* (emphasis added)).  The policy change, Officer Hashmi alleges, which required him to keep his beard *unmanicured*, did not change the fact that his accommodation letter required him to keep his beard "*neat and clean*."  (*Id.* ¶¶ 30 & 40–41 (emphasis added)).  Keeping a beard both unmanicured *and* neat and clean, Officer Hashmi alleges, is "impossible."  (*Id.* ¶¶ 41 & 88).

"Almost immediately after the change in policy," Officer Hashmi claims, he "and other officers who w[ore] beards for religious purposes[] were repeatedly targeted and harassed," while officers who wore beards for medical purposes were not.  (*Id.* ¶¶ 26–27).  For example, on May 21, 2018, Captain Martinez ordered Officer Hashmi to "provide an explanation for why [his] beard is groomed."  (*Id.* ¶ 29).  Officer Hashmi responded that his religion demands he wear a beard and

that his accommodation letter demands he keep his beard "neat and clean." (*Id.* ¶ 30). After this incident, Officer Hashmi allegedly suffered more harassment "by his supervisors because his beard was 'groomed.'" (*Id.* ¶ 31).

     As a result, he filed an internal "EEO Complaint" on May 25, 2018, in which he alleged:

> over the course of the past 2 months, I have been repeatedly harassed and threatened on the basis that my beard is 'too groomed.' I believe that such harassment is a pretext for discrimination and an attempt to force me to shave my beard in violation of my religious beliefs. I have suffered and continue to suffer a violation of my rights.

(*Id.* ¶ 32).

     Less than two weeks later, on June 6, 2018, Officer Hashmi "received a notice of charge or infraction specifying that he 'had facial hair which does not coincide with departmental policy' and 'which is in violation of the General Order.'" (*Id.* ¶ 33). The hearing officer, who is not named in the Amended Complaint, signed a "finding/disposition" that Officer Hashmi was "guilty." (*Id.* ¶ 34). As a sanction, Officer Hashmi received an "oral reprimand." (*Id.*). That reprimand, Officer Hashmi alleges, "was permanently affixed to his personnel record," and it continues to be affixed to his record to this day. (*Id.* ¶¶ 35 & 53). The oral reprimand, Officer Hashmi claims, "materially affects his employment status in that it affects his ability to, *inter alia*, seek or obtain a promotion." (*Id.* ¶ 37). Officer Hashmi further alleges that "Defendants were notified that Officer Hashmi filed the EEO Complaint prior to disciplining him." (*Id.* ¶ 36).

     Following the oral reprimand, on June 14, 2019, Captain Martinez advised Officer Hashmi that he would be "written up each and every day" he did not comply with former-General Order 10-18. (*Id.* ¶ 38). Officer Hashmi responded that he did not understand how to comply with that order by keeping his beard unmanicured while also keeping his beard trimmed at a length of one-half inch. (*Id.* ¶ 39).

3

The following day, Jordanna Das of the Jersey City Department of Human Resources emailed Officer Hashmi that his internal complaint was pending and that, in the meantime, he must comply with former-General Order 10-18.  (*Id.* ¶ 40).   On June 26, 2018, Officer Hashmi responded to Das's email in search of guidance:

> Ms. Das,
>
> Thank you for this information.  In the below email, you say that my June 27, 2017 accommodation asked for permission to grow and maintain a beard "up to one-half inch, un-manicured."  You then say, "However, when we met a few weeks ago, you discussed that due to your religious belief you also need to keep your beard manicured.'"
>
> My accommodation letter does not mention that my beard must be "un-manicured."  It notes that I was to comply with General Order 9-06.  General Order 9-06 makes no mention of beards needing to be "un-manicured."  The policy recently changed (General Order 10-18) and it now require beards to be "un-manicured."  Since that change, I have been harassed and told to stop manicuring my beard. My issue is that I do not understand how to comply with General Order 10-18 to keep my beard "un-manicured" while also keeping my beard neat and trimmed to 1/2 inch as is required by my accommodation letter (which I am attaching for your convenience). I understand "neat and trim" to mean the same thing as "manicured" and do not understand how I can possibly comply with these conflicting requirements.  In fact, I looked up the verb "to manicure" in Merriam Webster dictionary and it defines "to manicure" as "to trim closely and evenly."   A picture of this definition is also attached.  It is therefore impossible for me to keep my beard "neat and trim" and keep it "un-manicured" as required by General Order 10-18.
>
> I have been told that I will continue to be orally reprimanded unless I comply with General Order 10-18.  Please explain to me how I should comply with these orders but also follow my religious beliefs.  Please let me know as soon as possible as I am worried that I will continue to be disciplined by my supervisors.  I also remain worried that I will be retaliated for my EEO complaint."

(*Id.* ¶ 41).  Officer Hashmi did not receive a response to his request for guidance.  (*Id.* ¶ 42).

The final alleged incident occurred on July 20, 2018, when Captain Martinez confronted

Officer Hashmi about his beard.  (*Id.* ¶ 45).  During that confrontation, Captain Martinez allegedly told Officer Hashmi that he was not allowed to shave during the work week, despite there being no explicit rule against shaving during the work week, and that "he did not have a problem 'knocking [Officer Hashmi] over.'"  (*Id.* ¶¶ 45–48).

On October 26, 2018, the JCPD changed its policy by amending former-General Order 10-18 to remove the requirement that beards be kept "unmanicured."  (*Id.* ¶¶ 51–52).  Notwithstanding the change in policy, Officer Hashmi alleges that he "continues to fear retaliation for his complaints."  (*Id.* ¶ 54).  To date, Officer Hashmi has not received a response to his EEO Complaint, even though he requested a response/update several times.  (*Id.* ¶¶ 44 & 55).  On February 9, 2019, Officer Hashmi filed a charge of discrimination and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC"), and on July 23, 2019, the EEOC issued him a "Notice of Right to Sue."  (*Id.* ¶ 10).

On January 9, 2020, Officer Hashmi filed the Amended Complaint, which asserts several claims against Defendants: under 42 U.S.C. § 1983, for violating free exercise and equal protection; under the New Jersey Constitution, for violating free exercise and equal protection; under Title VII of the Civil Rights Act of 1964 ("Title VII"), for discrimination, failure to accommodate, and retaliation; and under the New Jersey Law Against Discrimination ("NJLAD"), for discrimination and retaliation.  On January 24, 2020, Defendants moved to dismiss the complaint under Rule 12(b)(6).  (D.E. No. 17).  Attached to their motion are several exhibits, one of which was former-General Order 10-18.  (D.E. No. 17-5, Ex. 4).  The Court will explain the basis for its consideration below.

## II.   LEGAL STANDARD

In assessing whether a complaint states a cause of action sufficient to survive dismissal

under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Although the Court is generally confined to the allegations in the pleadings in ruling on a motion to dismiss under Rule 12(b)(6), it may, without converting the motion to one for summary judgment, consider a document "*integral to or explicitly relied* upon in the complaint," as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (first quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996); and then quoting *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993)); *see also Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) ("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

## III.    DISCUSSION

### A.    Free Exercise

The Free Exercise Clause of First Amendment provides that "Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof*" (emphasis added). The Free Exercise Clause applies to the States through the Fourteenth Amendment.  *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).  "The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires."  *Employment Division v. Smith*, 494 U.S. 872, 877 (1990).

However, free exercise does not exempt religious adherents from neutral laws of general applicability, even if such laws incidentally impose substantial burdens on the practice of religion.  *Id.* at 879.  To allow otherwise, the Supreme Court has said, would "in effect . . . permit every citizen to become a law unto himself."  *Id.* (quoting *Reynolds v. United States*, 98 U.S. 145, 167 (1878)).  Neutral laws of general applicability are reviewed, like most others, under rational basis review—i.e., those laws must be reasonably related to a legitimate government interest.  *See Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 165 & n.24 (3d Cir. 2002).

But a law that is neither neutral nor generally applicable in form or application must satisfy strict scrutiny—i.e., those laws must be narrowly tailored to achieve a compelling government interest.  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993); *see also Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1732 (2018). "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature."  *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021).  And a law is not generally applicable if it has a system of individualized and discretionary exemptions that allow the government to consider, and grant an exemption based on,

a person's particular reasons and circumstances for deviating from the law.  *See id.*  Nor is a law "general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way."  *Id.*

    *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3d Cir. 1999) (Alito, J.), illustrates these standards well, particularly in the context of this case.  There, two devout Sunni Muslims challenged the Newark Police Department's no-beard policy, which had the stated purpose to foster a uniform appearance among police officers.  *Id.* at 360, 366.  The policy had two exemptions, one for certain undercover assignments and the other for skin-related medical reasons.  *Id.*  However, the policy did not have an exemption for officers whose sincerely held religious beliefs required them to wear a beard.  *Id.*  The Third Circuit found that the no-beard policy was neither neutral nor generally applicable because, by making a medical exemption but not a religious one, the police department made a "value judgment" that secular motivations are more important than religion ones.  *Id.* at 366.  Importantly, the same was not true of the department's assignment-related exemption because undercover police officers were not a comparable class to religious officers who were in uniform.  *Id.*  Allowing undercover officers to wear beards, the court explained, did not undermine the department's interest in fostering a uniform appearance among its officers because undercover officers were not held out to the public as such.  *Id.*

    Defendants argue, and the Court agrees, that unlike the policy in *Fraternal Order of Police*, former-General Order 10-18 is neutral and generally applicable because it imposes the same limitations on every comparable officer who may wear a beard.  (D.E. No. 18 ("Mov. Br.") at 8–9).  Attached to their motion to dismiss is former-General Order 10-18, which the Court may consider because Officer Hashmi quoted it in the Amended Complaint (Am. Compl. ¶ 2), because

it forms the basis of Officer Hashmi's claim, and because its authenticity is not in dispute.  That policy generally bans beards but then delineates three exemptions: (i) for "a medically diagnosed, treatable condition, a beard may be grown up to one millimeter, un-manicured"; (ii) due to the "nature of the member's assignment," except that officers must be "clean shaven when . . . in uniform"; and (iii) for a "religious accommodation, a beard may be grown up to one half inch, un-manicured."  (D.E. No. 17-5, Ex. 4, § 202.1.12).  Notably, both the medical exemption *and* the religious exemption require individuals to wear unmanicured beards.  Although the assignment-related exemption does not have that requirement, undercover officers are not sufficiently comparable to the uniformed religious officers because, just as in *Fraternal Order of Police*, their beard-wearing does not undermine the JCPD's stated policy "to establish uniform grooming standards."  (*Id.*).  In addition, former-General Order 10-18 required all officers to be "neat and clean" while on duty, and no comparable beard exemption preempts that requirement.  (*Id.*).

Moreover, while former-General Order 10-18 contained exemptions to the no-beard policy, those exemptions were not individualized and discretionary.  Rather, they were limited to three types of exemptions, Officer Hashmi actually received an exemption, and the religious exemption was just as favorable as the comparable medical exemption, as explained above.  This case is thus unlike *Fulton*, 141 S. Ct. 1868, where the Supreme Court found that the City of Philadelphia violated the Free Exercise Clause by terminating its contractual relationship with Catholic Social Services for refusing to certify same-sex couples as foster parents.  *Id.* at 1878–79.  The City of Philadelphia, the Supreme Court explained, "incorporate[d] a system of individual exemptions, made available . . . at the 'sole discretion' of the Commissioner," who had no intention of granting an exemption to Catholic Social Services.  *Id.* at 1878.

The Court also finds that Officer Hashmi has not plausibly alleged that former-General

Order 10-18 fails rational basis review.  Officer Hashmi argues that it is inappropriate for the Court

to reach this question on the current record because answering such a question requires the Court

to consult materials outside of the Amended Complaint.  (D.E. No. 20 ("Opp. Br.") at 11).  But he

offers no support for that proposition, and the Court notes there are several cases in which the

Third Circuit has affirmed district courts granting motions to dismiss because a challenged law or

policy satisfied rational basis review.  *See, e.g.*, *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209,

216 (3d Cir. 2013), *as amended* (May 10, 2013); *Ramsgate Court Townhome Ass'n v. W. Chester

Borough*, 313 F.3d 157, 160 (3d Cir. 2002); *see also Doe v. Christie*, 33 F. Supp. 3d 518, 527–28

(D.N.J. 2014).  Moreover, governmental decisions subject to rational basis review are "not subject

to courtroom fact-finding."  *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993).

Applying that standard of review, the Court must uphold former-General Order 10-18 "so

long as it bears a rational relation to some legitimate end."  *Connelly*, 706 F.3d at 216 (quoting

*Romer v. Evans*, 517 U.S. 620, 631 (1996)).  That standard of review is highly deferential, and it

allows the Court "to consider any conceivable . . . purpose," not just those articulated by the state

actor.  *Id.* (quoting *Ramsgate Ct. Townhome Ass'n*, 313 F.3d at 160).  Former-General Order 10-

18 is not irrational.  As noted, the purpose of the JCPD's grooming policy is "to establish uniform

grooming standards."  (D.E. No. 17-5, Ex. 4, § 202.1.12).  Such uniform standards reasonably

advance the legitimate interest of public safety, the interest asserted by Defendants.  (Mov. Br. at

9).  They do so by conveying to the public a professional and disciplined police force.  *See

Fraternal Ord. of Police*, 170 F.3d at 366 (assessing similar interest but under heightened

scrutiny).  Public trust in the police reasonably advances the rule of law and therefore public safety.

The uniform standards also advance public safety by forcing police to forgo, as a unit, something

that is commonly worn by the public.  *See id.*  Their shared sacrifice fosters collegiality and

camaraderie among officers, which aid them in effectively working together in the field.  That the JCPD admits certain exemptions to the no-beard policy does not make the policy irrational.  For one, the exemptions are reasonably tailored to promoting uniform grooming standards.  Indeed, while Officer Hashmi takes issue with the requirements that beards be kept neat and clean *and* unmanicured, those requirements apply to all similarly situated officers.  For another, the exemptions show that the JCPD understands its interests can be overcome in certain instances.

The Court therefore will dismiss Officer Hashmi's First Amendment claim that former-General Order 10-18 is facially discriminatory.  For the same reasons, the Court dismisses Officer Hashmi's claim that Defendants violated Article I, ¶ 3 of the New Jersey Constitution.  Defendants appear to argue, and Officer Hashmi appears not to contest, that the Article I, ¶ 3 claim rises and falls with the federal First Amendment claim.  (*See* Mov. Br. at 8).  Although it is not clear whether Article I, ¶ 3 runs in complete lock step with the federal First Amendment, *see generally Freedom From Religion Found. v. Morris Cty. Bd. of Chosen Freeholders*, 181 A.3d 992 (N.J. 2018), *cert. denied*, 139 S. Ct. 909 (2019), it appears that Article I, ¶ 3 does not exempt religious adherents from neutral and generally applicable laws, *see Hill v. New Jersey Motor Vehicle Comm'n*, No. A-1676-04T2, 2005 WL 2924832, at *3 (N.J. Super. Ct. App. Div. Nov. 7, 2005).

## B.      Equal Protection[2]

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  "This is essentially a direction that all persons

---

[2]      Officer Hashmi raised an additional claim that Defendants violated the First Amendment by targeting and harassing religious officers while leaving unscathed other officers who wore beards for medical purposes.  Defendants have moved to dismiss that claim.  Because that claim is substantially similar to Officer Hashmi's equal protection claim, the Court will address it in the context of equal protection.  *See Fulton*, 141 S. Ct. at 1877 ("Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature."); *Jewish Home of E. PA v. Ctrs. for Medicare & Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012) (explaining that a selective-enforcement challenge under the Equal Protection Clause must show that the "decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects" (quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985))).

similarly situated should be treated alike." *Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Att'y Gen. New Jersey*, 910 F.3d 106, 125 (3d Cir. 2018) (quoting *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005)).   To the extent the government treats individuals differently, such differential treatment must, at a minimum, be rationally related to a legitimate government purpose. *See Hassan v. City of New York*, 804 F.3d 277, 298 (3d Cir. 2015), *as amended* (Feb. 2, 2016).   But if the government treats individuals differently on the basis of a "'quasi-suspect' or 'suspect' classification," then the challenged action must survive heightened scrutiny—either "'intermediate scrutiny' or 'strict scrutiny,'" respectively. *Id.*  Officer Hashmi alleges that Defendants treated him differently on the basis of his religion, a classification that triggers "heightened scrutiny." *Id.* at 301.  The Third Circuit has expressly declined to answer the question whether strict or intermediate scrutiny applies to such classifications. *Id.*  The Court need not answer that question here because Officer Hashmi has not plausibly alleged that Defendants treated him differently because of his religion.

To assert such an impermissible classification, Officer Hashmi could (i) point to a policy that is facially discriminatory; (ii) identify a policy that is facially neutral but is applied with a greater degree of severity against members of a suspect or quasi-suspect group; or (iii) point to a facially neutral policy that is designed to inflict greater burdens on members of a suspect or quasi-suspect group. *Id.* at 294–95.  Officer Hashmi seems to attempt all three types of challenges.

The first and third types can be briefly disposed of.  As to the first type, as noted above, the Amended Complaint does not plausibly allege that former-General Order 10-18 is facially discriminatory.  As to the third type, while Officer Hashmi alleges that officers who wear beards for medical purposes are not as burdened by General Order 10-18 "because they are ordinarily willing to trim their beards without violating their sincerely held religious beliefs" (Am. Compl. ¶

65), there is no plausible allegation in the Amended Complaint that Officer Kelly designed former-General Order 10-18 because of, rather than in spite of, the impact it would have on religious officers.  *See Greco v. Senchak*, 627 F. App'x 146, 149 (3d Cir. 2015); *Jewish Home of E. PA*, 693 F.3d at 363.

As to the second type of challenge, Officer Hashmi claims that Defendants applied former-General Order 10-18 only to officers who wore beards for religious purposes, in order to target them.  (Am. Compl. ¶¶ 26–27).  Defendants argue, and the Court agrees, that this claim should be dismissed because Officer Hashmi "fails to plead that he was treated differently than members of an unprotected class" due his religion.  (Mov. Br. at 10).  At bottom, Officer Hashmi alleges only a legal conclusion that Defendants engaged in unlawful religious discrimination.  That allegation is "not entitled to the assumption of truth," because it is not accompanied with facts plausibly supporting it.  *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (explaining that "bare assertions" and "conclusory" allegations of racial and religious discrimination are "not entitled to be assumed true").

Indeed, Officer Hashmi fails to allege "[a]n essential element of a claim of selective treatment under the Equal Protection Clause," which "is that the comparable parties were 'similarly situated'" but treated differently.  *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005)).  Officer Hashmi does not provide a specific example of another religious officer being targeted, nor does he allege that officers who wore beards for medical purposes ever violated former-General Order 10-18 but were treated with greater leniency than religious officers.  *See Zitter v. Petruccelli*, 744 F. App'x 90, 97 (3d Cir. 2018) ("Because Zitter did not allege any similarly-situated person was treated differently, the District Court properly dismissed this claim."); *PG Pub. Co. v. Aichele*, 705 F.3d

91, 115 (3d Cir. 2013) (affirming dismissal of complaint based on allegation of "systemic discriminatory purpose" where the complaint alleged only "some instances" of differential treatment); *Richardson v. Didok*, No. 19-5072, 2020 WL 5602526, at *3 (E.D. Pa. Sept. 17, 2020) ("Nowhere in the amended complaint does Plaintiff identify any specific individuals or groups of people who might serve as comparators. Without a more specific identification of an alleged comparator, such a bare, amorphous assertion is insufficient to satisfy the first element of a selective enforcement claim."); *cf. Tenafly Eruv Ass'n, Inc.*, 309 F.3d at 167 & n.28 (holding that borough violated free exercise by enforcing generally applicable ordinance against religious conduct but not against secular conduct, despite borough officials knowing about the secular violators). Although the JCPD's beard policy may have been difficult to follow, every comparable person was subject to it.

Because former-General Order 10-18 survives rational-basis review on its own terms, the Court perceives no reason its neutral enforcement would not. Therefore, the Court will dismiss Officer Hashmi's equal protection claim.[3]

### C.   Title VII

Three provisions of Title VII are relevant to this case. First, the antidiscrimination provision makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, *religion*, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Second, § 2000e(j) defines

---

[3]      To the extent that Officer Hashmi complains of intentional religious discrimination because his internal EEO Complaint was not timely processed, he has not alleged the JCPD dealt with comparable complaints from non-religious officers in a timelier manner. Finally, although Officer Hashmi outlines a situation in which Captain Martinez stated he did not have an issue "knocking [Officer Hashmi] over" (Am. Compl. ¶ 47), he has not alleged a single example of Captain Martinez treating a secular officer who violated the beard policy more leniently. While incivility is one thing, intentional religious discrimination is another.

"Religion" as "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." Section 2000e(j), read in conjunction with Title VII's antidiscrimination provision, makes it unlawful "for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977). Third, the antiretaliation provision makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." § 2000e-3(a). Officer Hashmi claims that Defendants violated each provision of Title VII. Each claim is assessed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), explained precisely in the context of each claim below.

### (i) <u>Disparate Treatment</u>

To make out a *prima facie* case of religious discrimination under Title VII, the plaintiff must allege (i) that he is a member of a protected class, (ii) that he suffered an adverse employment action, and (iii) that nonmembers of the protected class were treated more favorably. *See Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 281–82 (3d Cir. 2001). While a plaintiff need not make out a prima facie case, he must allege enough facts that "raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (cleaned up).

Officer Hashmi claims that Defendants committed unlawful discrimination by applying

former-General Order 10-18 pretextually, and targeting and harassing him and others, on the basis of his and their religion.  (Am. Compl. ¶¶ 26–27 & 80).  But as noted above, Officer Hashmi has not alleged sufficient facts supporting his conclusion that he was treated differently than similarly situated non-religious officers.  That is fatal to his Title VII disparate treatment claim.  *See, e.g.*, *Chernobai v. Hydraulax Prod., Inc.*, No. 14-6938, 2015 WL 710464, at *4 (E.D. Pa. Feb. 19, 2015) (granting motion to dismiss where plaintiff failed to allege "facts showing that there were no mitigating or distinguishing factors explaining the difference in treatment"); *Gawrych v. Pennsylvania*, No. 07-0869, 2008 WL 11499325, at *6 (M.D. Pa. Apr. 8, 2008) (granting motion to dismiss where plaintiff did not offer more than the conclusion that comparable persons were treated more favorably).

### (ii)     Failure to Accommodate

"To establish a *prima facie* case of religious discrimination [for failure to accommodate], the employee must [allege]: (1) she holds a sincere religious belief that conflicts with a job requirement; (2) she informed her employer of the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement."  *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009).  As noted above, a plaintiff need not prove a prima facie case but rather must simply allege enough facts that "raise a reasonable expectation that discovery will reveal evidence of the necessary elements."  *Connelly*, 809 F.3d at 789 (cleaned up).

Officer Hashmi claims that Defendants failed to accommodate him by "[f]ailing to provide an adequately clear religious accommodation that allows the growth of a reasonable length beard." (Am. Compl. ¶ 80).  More specifically, he claims that it was "impossible" to comply with the dual requirements of keeping his beard "neat and clean" and "unmanicured," thus constituting an unreasonable accommodation.  (*Id.* ¶ 41).  Defendants do not dispute that Officer Hashmi has

alleged a *prima facie* case that Defendants failed to accommodate him.  Instead, they argue that any further accommodation would constitute an undue hardship to the JCPD.  (Mov. Br. at 15–17).

"An accommodation constitutes an 'undue hardship,'" and therefore need not be granted, "if it would impose more than a *de minimis* cost on the employer."  *Webb*, 562 F.3d at 259–60 (quoting *Trans World Airlines*, 432 U.S. at 84).  Defendants argue that accommodating Officer Hashmi further would impose more than a *de minimis* cost on the JCPD.  (Mov. Br. at 15–17).  In support, they rely on *Webb*, 562 F.3d 256, and *Wallace v. City of Philadelphia*, No. 06-4236, 2010 WL 1730850 (E.D. Pa. Apr. 26, 2010).  (Mov. Br. at 14–17).  In *Webb*, 562 F.3d 256, the Third Circuit affirmed the district court's determination on summary judgment that a female officer's request to wear religious garb with her uniform, if granted, would constitute an undue burden on the police department.  *Id.* at 261–62.  In *Wallace*, 2010 WL 1730850, the district court ruled on summary judgment that allowing religious officers "to grow beards beyond one-quarter inch would indeed impose the undue hardship of sacrificing the Department's commitment to a neutral appearances policy."  *Id.* at *7.

Neither case supports dismissing Officer Hashmi's claim at this stage of litigation.  To start, as Officer Hashmi points out, this case concerns a different policy, a different police department, and a different failure to accommodate from those present in *Wallace* and *Webb*.  (*See* Opp. Br. at 18–19).  Indeed, Officer Hashmi sought an accommodation from the dual requirement that he keep his beard neat and clean *and* unmanicured.  (*Id.*).  Moreover, both *Webb* and *Wallace* were decided on fully developed summary judgment records, and whether a religious accommodation is feasible requires the Court to engage in a fact-intensive inquiry.  *Webb* illustrates this point.  There, the Third Circuit was clear that, in determining whether an

accommodation presents an undue hardship, a court is to "focus on the specific context of each case, looking to both the fact as well as the magnitude of the alleged undue hardship." *Webb*, 562 F.3d at 260.  And the Third Circuit has said elsewhere that "the determination whether a particular accommodation works an undue hardship on either an employer or union must be made by considering the particular factual context of each case." *Protos v. Volkswagen of Am., Inc.*, 797 F.2d 129, 134 (3d Cir. 1986) (cleaned up).

Officer Hashmi alleges the necessary elements of his failure-to-accommodate claim, so the Court will not dismiss it.

### (iii)   <u>Retaliation</u>

"To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'"  *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006), *as amended* (Sept. 13, 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).  Like the above two claims, Officer Hashmi need not prove his claim but only allege enough facts, taken as true, "rais[ing] a reasonable expectation that discovery will reveal evidence of the necessary elements." *Connelly*, 809 F.3d at 789 (cleaned up).

Officer Hashmi claims that Defendants committed unlawful retaliation by issuing an oral warning less than two weeks after he filed his internal EEO Complaint claiming religious discrimination.  (Am. Compl. ¶¶ 32–33 & 80).  And he claims that "Defendants were notified that Officer Hashmi filed the EEO Complaint prior to disciplining him." (*Id.* ¶ 36).  Defendants do not dispute that Officer Hashmi engaged in a protected activity under Title VII by filing the internal EEO Complaint alleging religious discrimination.  Instead, they argue that Officer Hashmi did not

plead the latter of two elements of the *prima facie* case—specifically, that an adverse employment action was taken against him, and there was a causal connection between the protected activity and the adverse employment action.  (Mov. Br. at 17–18).

*Adverse Employment Action*.  To allege an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in th[e retaliation] context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citations omitted).  This standard is objective in that it asks what the "*reasonable* employee" would believe.  *Id.*  And it is fact intensive in that the "significance of any given act of retaliation will often depend upon the particular circumstances.  Context matters."  *Id.* at 69.  "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."  *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998)).  For example, while "[a] schedule change in an employee's work schedule may make little difference to many workers," such a change "may matter enormously to a young mother with school-age children," and while "[a] supervisor's refusal to invite an employee to lunch is normally trivial," "excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination."  *Id.*; *compare Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 799 (3d Cir. 2010) (holding that no reasonable factfinder could find that transferring a state trooper to another station and making his commute four and a one-quarter miles longer was materially adverse under *Burlington*'s standard), *with Moore*, 461 F.3d at 348 ("We find that a reasonable

jury could conclude that a lateral transfer from the district where a police officer had earned goodwill and built positive relations with the community over time is the kind of action that might dissuade a police officer from making or supporting a charge of unlawful discrimination within his squad.").

Accepting Officer Hashmi's allegations as true and drawing all reasonable inferences in his favor, the Court finds he has pleaded a materially adverse employment action.  Officer Hashmi alleges that, over the course of a month and a half following the filing of his internal complaint, he received an "oral reprimand" that "was permanently placed in [his] personnel file" and that "materially affects his employment status in that it affects his ability to, *inter alia*, seek or obtain a promotion"; was advised that he would be "written up" each day he did not comply with former-General Order 10-18; and was physically threatened during a confrontation about former-General Order 10-18 by Captain Martinez, who said "he did not have a problem 'knocking [Officer Hashmi] over.'"  (Am. Compl. ¶¶ 33–34, 37–38 & 45–48).  These actions, taken together and viewed in light most favorable to Officer Hashmi, may constitute materially adverse employment actions, in that a reasonable officer in Officer Hashmi's position well might be dissuaded from filing a complaint. *See Rivers v. Potter*, No. 05-4868, 2007 WL 4440880, at *9 (D.N.J. Dec. 18, 2007) (explaining that a warning letter and subsequent conversation about the letter in a progressive disciplinary system "would cause an employee to reconsider bringing an EEO charge").

*Causal Connection*.  As noted, an employee must allege a causal connection between the protected activity and the adverse employment action.  "[T]he Third Circuit has articulated two main factors that establish a causal link satisfying a *prima facie* case of retaliation: (1) timing or (2) evidence of ongoing antagonism." *Abarca v. KC Consulting Grp., Inc.*, No. 16-0213, 2018

WL 2215516, at *7 (D.N.J. May 14, 2018).  "To demonstrate a link between protected activity and an employer's adverse action, a plaintiff may rely on the temporal proximity between the two if 'unusually suggestive.'"  *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015) (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)). However, "the temporal proximity of adverse action to protected conduct does not establish that the adverse actor had knowledge of the protected conduct before acting."  *Id.* at 197.  And to survive a motion to dismiss, the plaintiff must at the very least sufficiently allege that the employer was aware the plaintiff engaged in the protected activity.  *See Moore*, 461 F.3d at 351.

Officer Hashmi alleges that on June 6, 2018, which was less than two weeks after he filed the internal complaint on May 25, 2018, he was orally reprimanded for the precise thing his internal complaint took issue with—the application of former-General Order 10-18.  A span of "two weeks *may* be close enough temporally to be probative of causation" where, as here, the employee alleges that the employer was "aware of the protected conduct."  *Hammond v. City of Wilkes Barre*, 628 F. App'x 806, 808 (3d Cir. 2015).  Officer Hashmi alleges as much—that Defendants were "notified that Officer Hashmi filed the EEO Complaint prior to disciplining him."  (Am. Compl. ¶ 36).  The temporal proximity of two weeks between the oral reprimand, Defendants' alleged awareness of the protected activity, and the continuing nature of Defendants' conduct all combine to sufficiently allege a causal connection between the protected activity and the adverse employment action.

The Court thus will not dismiss Officer Hashmi's retaliation claim.

### D.     NJLAD

Officer Hashmi alleges that Defendants violated the NJLAD by discriminating against him based on his religion and retaliating against him for filing an internal complaint.  (Am. Compl. ¶¶

84–85).  Defendants moved to dismiss these claims for the same reasons they moved to dismiss

Officer Hashmi's Title VII claims.  Officer Hashmi does not dispute that his NJLAD claims against

Defendants rise and fall with his Title VII claims.  And with respect to the discrimination claim,

the Court understands that to be the case.  *See Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831,

842 (3d Cir. 2016) ("This Court's discrimination inquiry is the same for claims filed under Title

VII and the NJLAD as the New Jersey statute borrows the federal standard set forth in *McDonnell*

*Douglas*." (citing *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 249 (3d Cir. 2006))).

The Court therefore dismisses Officer Hashmi's NJLAD claim for discrimination.  But the Court

does not dismiss Officer Hashm's NJLAD claim for retaliation because his parallel Title VII

claims survives the motion to dismiss.

Officer Hashmi also brings claims for individual liability against Individual Defendants for

aiding and abetting "in the discrimination of" Officer Hashmi.  (Am. Compl. ¶ 86).  He also alleges

that Individual Defendants "gave substantial assistance or encouragement to the unlawful

discriminatory and retaliatory conduct of the JCPD and the City of Jersey City."  (*Id.* ¶ 87).

Unlike Title VII, the NJLAD imposes individual liability on "any person, whether an

employer or an employee or not," who "aid[s], abet[s], incite[s], compel[s] or coerce[s] the doing

of any of the acts forbidden under this act, or to attempt to do so."  N.J.S.A § 10:5-12(e).  The New

Jersey Supreme Court has said:

> In order to hold an employee liable as an aider or abettor, a plaintiff
> must show that (1) the party whom the defendant aids must perform
> a wrongful act that causes an injury; (2) the defendant must be
> generally aware of his role as part of an overall illegal or tortious
> activity at the time that he provides the assistance; and (3) the
> defendant must knowingly and substantially assist the principal
> violation.

*Cicchetti v. Morris Cty. Sheriff's Office*, 194 N.J. 563, 594, 947 A.2d 626, 645 (2008) (cleaned

up).

As for the disparate treatment claim, the Court dismisses that claim against Individual Defendants for failure to plead the first element of aider and abettor liability—i.e., that there was a wrongful act.  Indeed, as explained above, Officer Hashmi has not sufficiently pleaded a claim of religious discrimination.

As for the retaliation claim, the Court dismisses that claim as against Chief Kelly.  There is no allegation in the Amended Complaint concerning Chief Kelly's conduct after he implemented former-General Order 10-18 on March 23, 2018—more than two months *before* Officer Hashmi filed his internal complaint on May 25, 2018.  (Am. Compl. ¶¶ 25 & 32).  Thus, Officer Hashmi has failed to allege Chief Kelly substantially assisted in the retaliation.  However, the Court will not dismiss that claim as against Captain Martinez.  Captain Martinez's alleged conduct, as explained above, substantially forms the basis of Officer Hashmi's retaliation claim.

## IV.    CONCLUSION

For the above stated reasons, the Court DENIES in part and GRANTS in part Defendants' motion to dismiss.  Officer Hashmi's claim that former-General Order 10-18 is facially discriminatory is dismissed *with prejudice*.  His other dismissed claims are dismissed *without prejudice* to his right to move under Federal Rule Civil Procedure 15 for leave to amend to cure the deficiencies outlined above.  An appropriate Order will be entered.


                                                                    */s/Esther Salas*
Dated: September 7th, 2021                          Esther Salas, U.S.D.J.